# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS U.S.A. and LG ELECTRONICS INC., <br><br> Defendants. | C.A. No. 18-1217-MN <br><br> STIPULATED ORDER REGARDING DEFAULT STANDARD FOR DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI") |

**1.     Purpose.**  This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

**2.     General Provisions.**

<u>**a.     Ediscovery limitations**.  The parties will not conduct a search and production of electronic mail initially.  If, at such a time as the receiving party has reviewed the contents of the producing party's primary document production, third-party document productions and deposition testimony, the receiving party determines that electronic-mail discovery is necessary, the receiving party may indicate such determination to the producing party.  Upon such determination, the producing party and receiving party shall meet and confer in good faith to identify which specific issues and which particular electronic-mail sources will be searched and to identify reasonable mechanisms for narrowly tailored searches of, or for, such electronic-mail discovery.  Should the parties be unable to reach an agreement on these issues, the requesting party must submit a five-page letter brief to the Court explaining the need for electronic-mail discovery.</u>

Unless ordered otherwise, the collection, search, and production of electronic mail shall be limited to non-technical topics and shall be limited to custodians identified by the producing party as likely to have electronic mail relevant to those topics.  There shall be no electronic-mail discovery for technical topics and technical custodians.

   **b.**  **Cooperation.**  Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36.  In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

   **c.**  **Proportionality.**  Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1]  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   **d.**  **Preservation of Discoverable Information.**  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

     (i)  Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

    (ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

  <u>e</u>. **Privilege.**

    (i) The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

    (ii) With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

    (iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    (iv) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privilege or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding.  Information that contains privileged matter or attorney work product shall be immediately returned if such information appears on its face to have been inadvertently produced—or if notice is provided within 30 days of inadvertent production.

 **3.** **Initial Disclosures**.  Within 30 days after the Rule 16 Conference or within a timeframe to be established, each party shall disclose:

  **a.** **Custodians.**  Up to 5 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely.  The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of

the information.[2]

        b.    **Non-custodial data sources.**[3]  A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

        c.    **Notice.**  The parties shall identify any issues relating to:

        (i)    Any additional sources of ESI not identified in Schedule A (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

        (ii)    Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

        (iii)    Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.  Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

    4.    **Follow-Up Discovery in Patent Litigation.**

        a.    Absent a showing of good cause, follow-up discovery to the discovery set forth in Paragraphs 7(a) to (d) of Scheduling Order, D.I. 29 shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

    5.    **Specific E-Discovery Issues.**

---

[2] As these disclosures are "initial," each party shall be permitted to supplement.
[3] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

      **a.**      **On-site inspection of electronic media.**  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

      **b.**      **Search methodology.**

      (i)      If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party.  Absent a showing of good cause, a requesting party may request no more than 5 additional terms to be used in connection with the electronic search.  Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed.  The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not discoverable under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit.  The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) if appropriate, the emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

      (ii)      Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.  Additional culling of system file types based on file extension may include, but are not limited to:  WINNT, LOGS, DRVS, MP3, MP4, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File

(tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

     (iii) Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

  **c.** **Format**. ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or Tiff). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

  **d.** **Native files**. The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

    **e.**  **Metadata fields**.  The parties are only obligated to provide the following metadata for all ESI produced , to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

    **f.**  **Source Code.**  No provision of this Order affects any inspection of source code that is responsive to a discovery request and will be made available consistent with the protective order governing this case.

  **6.**  **Modification.**

  This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.  Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

| | |
|---|---|
| Dated: March ___, 2020 | **FARNAN LLP** |
| *Of Counsel:* | */s/ Brian E. Farnan* |
| | Brian E. Farnan (Bar No. 4089) |
| Sandeep Seth | Michael J. Farnan (Bar No. 5165) |
| | 919 N. Market Street, 12th Floor |
| **SethLaw** | Wilmington, DE 19801 |
| Two Allen Center | Telephone: (302) 777-0300 |
| 1200 Smith Street, Ste. 1600 | Fax: (302) 777-0301 |
| Houston, TX 77002 | bfarnan@farnanlaw.com |
| Telephone: (713) 244-5017 | mfarnan@farnanlaw.com |
| Facsimile: (713) 244-5018 | |
| ss@sethlaw.com | |
| | |
| Robert J. Yorio | |
| **Carr & Ferrell LLP** | |
| 120 Constitution Drive | |
| Menlo Park, California 94025 | *Attorneys for Plaintiff* |
| Telephone No.: (650) 812-3400 | *Sentius International, LLC* |
| Facsimile No.: (650) 812-3444 | |
| yorio@carrferrell.com | |
| | |
| Dated: March ___, 2020 | **RICHARDS, LAYTON & FINGER, P.A.** |
| *Of Counsel:* | */s/ Alexandra M. Ewing* |
| | Frederick L. Cottrell, III (Bar No. 2555) |
| Jonathan K. Waldrop | Jason J. Rawnsley (Bar No. 5379) |
| Darcy L. Jones | Alexandra M. Ewing (Bar No. 6407) |
| Marcus A. Barber | One Rodney Square |
| John W. Downing | 920 N. King Street |
| **KASOWITZ BENSON TORRES LLP** | Wilmington, DE 19801 |
| 333 Twin Dolphin Drive, Suite 200 | Telephone: (302) 651-7700 |
| Redwood Shores, California 94065 | cottrell@rlf.com |
| Telephone: (650) 453-5170 | rawnsley@rlf.com |
| jwaldrop@kasowitz.com | ewing@rlf.com |
| djones@kasowitz.com | |
| mbarber@kasowitz.com | *Attorneys for Defendants* |
| jdowning@kasowitz.com | *LG Electronics U.S.A. and LG Electronics Inc.* |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____  _____
The Honorable MaryEllen Noreika
United States District Judge

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Automatically saved versions of documents and emails.

6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7. Voice messages.

8. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

9. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

10. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

11. Logs of calls made from mobile devices.

12. Server, system or network logs.

13. Video and audio recordings.

14. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

16. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

## ~~SCHEDULE B~~

### ~~PRODUCTION FORMAT AND METADATA~~

1. ~~**Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).~~

2. ~~**Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.~~

3. ~~**Metadata Fields and Metadata File.** The parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:~~

   - ~~Delimiter = ¶ (ASCII:020)~~
   - ~~Text-Qualifier = þ (ASCII:254)~~
   - ~~New Line = ® (ASCII:174)~~

| ~~Field Name~~ | ~~Field Description~~ |
|---|---|
| ~~BEGBATES~~ | ~~Beginning Bates number as stamped on the production image~~ |
| ~~ENDBATES~~ | ~~Ending Bates number as stamped on the production image~~ |
| ~~BEGATTACH~~ | ~~First production Bates number of the first document in a family~~ |
| ~~ENDATTACH~~ | ~~Last production Bates number of the last document in a family~~ |
| ~~CUSTODIAN~~ | ~~Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian).~~ |
| ~~SUBJECT~~ | ~~Subject line of email~~ |
| ~~TITLE~~ | ~~Title from properties of document~~ |
| ~~DATESENT~~ | ~~Date email was sent (format: MM/DD/YYYY)~~ |
| ~~TO~~ | ~~All recipients that were included on the "To" line of the email~~ |
| ~~FROM~~ | ~~The name and email address of the sender of the email~~ |
| ~~CC~~ | ~~All recipients that were included on the "CC" line of the email~~ |

| Field Name | Field Description |
|---|---|
| ~~BCC~~ | ~~All recipients that were included on the "BCC" line of the email~~ |
| ~~AUTHOR~~ | ~~Any value populated in the Author field of the document properties~~ |
| ~~FILENAME~~ | ~~Filename of an electronic document (Edoc or attachment)~~ |
| ~~DATEMOD~~ | ~~Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment)~~ |
| ~~DATECREATED~~ | ~~Date the document was created (format: MM/DD/YYYY)~~ |
| ~~FILESIZE~~ | ~~Size (in bytes) of an electronic document (Edoc or attachment)~~ |
| ~~FILEEXTENSION~~ | ~~Suffix to a filename that indicates the file format of its content (Edoc or attachment)~~ |
| ~~NATIVELINK~~ | ~~Native File Link (Native Files only)~~ |

4. ~~**TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the original documents.~~

5. ~~**Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.~~

6. ~~**Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.~~

7. ~~**Bates Numbering.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.~~

8. ~~**Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.~~

9. ~~**Redaction Of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.~~

10. ~~**Native File Productions.** Spreadsheets (e.g., MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.~~

11. ~~**Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.~~

12. ~~**Production Media.** Documents shall be produced on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of Production Media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.~~

Document comparison by Workshare 10.0 on Monday, March 30, 2020 11:12:49 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\mhulbert\Desktop\LG Comparisons\ESI\LG ESI.DOCX |
| Description | LG ESI |
| Document 2 ID | file://C:\Users\mhulbert\Desktop\LG Comparisons\ESI\ESI Order LG Comments.docx |
| Description | ESI Order LG Comments |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 20 |
| Deletions | 76 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 96 |