# EXHIBIT 2

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 2 of 16 PageID #: 273
Case 1:18-cv-00836-RGA Document 24 Filed 01/30/19 Page 1 of 15 PageID #: 245

1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4   GROOVE DIGITAL, INC.,         )
                                   )
 5              Plaintiff,         )
                                   ) C.A. No. 18-836(RGA)
 6   v.                            )
                                   )
 7   KING.COM LTD., KING.COM INC., )
     and KING.COM (US) LLC,        )
 8                                 )
                Defendants.        )
 9

10                                      J. Caleb Boggs Courthouse
                                        844 North King Street
11                                      Wilmington, Delaware

12
                                        Tuesday, January 22, 2019
13                                      10:01 a.m.
                                        Scheduling Conference
14

15   BEFORE: THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

16

17   APPEARANCES:

18           YOUNG CONAWAY STARGATT & TAYLOR, LLP
             BY:  KAREN L. PASCALE, ESQUIRE
19
                       -and-
20
             BUTZEL LONG
21           BY:  BRIAN S. SEAL, ESQUIRE

22                                      For the Plaintiff

23

24

25
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 3 of 16 PageID #: 274
Case 1:18-cv-00836-RGA Document 24 Filed 01/30/19 Page 2 of 15 PageID #: 246

2

```
 1    APPEARANCES CONTINUED:

 2              MORRIS NICHOLS ARSHT & TUNNELL LLP
                BY:  JACK B. BLUMENFELD, ESQUIRE
 3
                          -and-
 4
                FENWICK & WEST
 5              BY:  MICHAEL J. SACKSTEDER, ESQUIRE

 6                                    For the Defendants

 7
                       ***   PROCEEDINGS   ***
10:01:58  8

10:01:58  9              THE COURT:  Good morning, everyone.

10:02:04 10              (Everyone said, Good morning, Your Honor.)

10:02:05 11              THE COURT:  This is the Rule 16 in Groove

10:02:08 12   Digital versus King.com.  Civil Action Number 18-836.

10:02:14 13              Ms. Pascale.

10:02:16 14              MS. PASCALE:  Good morning, Your Honor.  Karen

10:02:18 15   Pascale for Groove Digital, and with me today is Brian Seal

10:02:21 16   from the Butzel Long law firm.

10:02:24 17              MR. SEAL:  Good morning, Your Honor.

10:02:25 18              THE COURT:  Mr. Blumenfeld.

10:02:26 19              MR. BLUMENFELD:  Good morning, Your Honor.  Jack

10:02:28 20   Blumenfeld of Morris Nichols for the defendants, along with

10:02:31 21   Michael Sacksteder from Fenwick & West.

10:02:33 22              MR. SACKSTEDER:  Good morning, Your Honor.

10:02:35 23              THE COURT:  Good morning to you all.

10:02:36 24              So I don't think I've met you before, Mr. Seal.

10:02:47 25              MR. SEAL:  No.
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 4 of 16 PageID #: 275
Case 1:18-cv-00856-RGA Document 24 Filed 01/30/19 Page 3 of 15 PageID #: 247

3

```
10:02:49   1                THE COURT:  Mr. Sacksteder, strangely enough, I
10:02:50   2   was speaking to one of your partners some time in the last
10:02:53   3   three days and asking after you, so good to see you.  I did
10:02:56   4   not realize you were actually involved in any cases that I
10:03:00   5   currently had.
10:03:01   6                All right.  So I did look at this online.  I
10:03:09   7   don't think I've written down here, but I think there was
10:03:11   8   only one dispute which was this ESI proposal; right?
10:03:16   9                MR. SEAL:  That's right.
10:03:17  10                MR. SACKSTEDER:  That's right.
10:03:18  11                THE COURT:  So I had a reaction when I looked at
10:03:20  12   it, but since you only had one dispute, and I know
10:03:23  13   Mr. Sacksteder has come from California -- where have you
10:03:26  14   come from?
10:03:26  15                MR. SEAL:  Washington, D.C.
10:03:28  16                THE COURT:  So you're the plaintiff.  Why don't
10:03:30  17   you tell me why I should do what you want, and then I'll
10:03:32  18   give him a chance to tell me why I should do what he wants.
10:03:37  19                MR. SEAL:  So this case involves Smartphone
10:03:40  20   application software.  We believe that a lot of the --
10:03:43  21                THE COURT:  I think I saw the word applet.
10:03:45  22                MS. PASCALE:  Applet is part of the software
10:03:49  23   application which is different from the application.  Applet
10:03:52  24   is a specific piece of code that operates a specific
10:03:55  25   function within the overall application.  But given the
```

```
10:03:59  1   technological nature of the case and the fact that it is
10:04:02  2   related to software primarily, we expect many of the
10:04:06  3   documents in discovery are going to be electronic.  There
10:04:09  4   will be a lot of information in email.  There will be a lot
10:04:11  5   of information in, I assume, power-point or some forms of
10:04:14  6   code.
10:04:15  7              And the ESI would be helpful to us to determine
10:04:18  8   who we need to depose, who we need to request additional
10:04:21  9   documents of, and direct the course of discovery in general.
10:04:23 10              THE COURT:  But can't you get that a lot cheaper
10:04:27 11   than doing electronic discovery, like asking who wrote this
10:04:30 12   code?
10:04:30 13              MR. SEAL:  We potentially could, but that would
10:04:32 14   take a while to go through the initial document discovery
10:04:37 15   that we would receive under defendants' proposal which we
10:04:40 16   don't anticipate would be all that substantial any way
10:04:43 17   because, given our experience in prior cases of this nature,
10:04:48 18   the vast majority of the documents will be in electronic
10:04:52 19   form as opposed to paper documents.
10:04:54 20              THE COURT:  But whether or not there's
10:04:57 21   infringement here isn't going to be determined by code of
10:05:00 22   some kind; right?
10:05:01 23              MR. SEAL:  The key infringement question, Your
10:05:03 24   Honor, will be determined by the source code, but there are
10:05:06 25   other aspects to it in terms of whether or not the code has
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 6 of 16 PageID #: 277
Case 1:18-cv-00856-RGA Document 24 Filed 01/30/19 Page 5 of 15 PageID #: 249

5

```
10:05:09   1    been activated at one time or another, whether there are
10:05:13   2    different versions, instructions offered on defendants'
10:05:15   3    website for users to operate the code, things of that
10:05:19   4    nature.  Contracts with vendors, including contracts
10:05:22   5    potentially with Apple who provides the platform for the IOS
10:05:26   6    version of the application.
10:05:27   7                   THE COURT:  But the things that you're
10:05:34   8    mentioning seem like the kind of things that you're going to
10:05:37   9    get anyhow; right?  Give me the contracts for the code or
10:05:40  10    the contracts with your suppliers of this, that, or the
10:05:44  11    other thing.
10:05:45  12                   I mean, doing it through searching
10:05:49  13    electronically-stored information, maybe I'm wrong about how
10:05:52  14    these things are done, but the kinds of things you're
10:05:57  15    mentioning don't seem like the kinds of things you need to
10:06:00  16    be searching email for.
10:06:02  17                   MR. SEAL:  In our experience, Your Honor, those
10:06:04  18    are the kind of documents that tend to be located in email.
10:06:07  19    Sometimes only in email.  There are often times where the
10:06:11  20    hard-copy documents are not maintained in companies that are
10:06:14  21    in the business that King.com is in.
10:06:16  22                   So rather than go through a lengthy process of
10:06:19  23    identifying gaps in production and then pursuing ESI at a
10:06:24  24    subsequent stage, we'd prefer to get it all up front.
10:06:29  25                   THE COURT:  All right.  Anything else?
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 7 of 16 PageID #: 278
Case 1:18-cv-00856-RGA Document 24 Filed 01/30/19 Page 6 of 15 PageID #: 250

6

```
10:06:31   1                MR. SEAL:  That's it, Your Honor.
10:06:32   2                THE COURT:  Mr. Sacksteder.
10:06:33   3                MR. SACKSTEDER:  Your Honor, I think you're
10:06:34   4   exactly right, that this is a case where the key issue is
10:06:39   5   going to be what our client's product does.  You know,
10:06:44   6   largely in aspects that you can see and sometimes in aspects
10:06:48   7   that are under the hood, but in either event, that's the
10:06:52   8   sort of information that gets provided, as Your Honor
10:06:56   9   mentioned, in source code.  It's the kind of information
10:06:59  10   that shows up in technical specifications and documentation.
10:07:04  11                We're not saying we shouldn't give up that sort
10:07:05  12   of stuff.  There are, you know, commonly-held electronic
10:07:09  13   documents that, of course, we would be expecting to produce.
10:07:13  14                All we're asking is that we don't go through the
10:07:15  15   enormous expense of collecting, and reviewing, and producing
10:07:21  16   email documentation that's probably not going to be used in
10:07:24  17   the case at all, unless it's determined that it really is
10:07:27  18   necessary after we've produced everything else.
10:07:30  19                THE COURT:  Well, so when you say "unless it's
10:07:33  20   determined that it really is necessary" after you've
10:07:35  21   produced everything else, what exactly do you mean by that?
10:07:42  22                MR. SACKSTEDER:  We expect to produce our core
10:07:45  23   technical documents per the schedule and per the local
10:07:53  24   rules, and we expect to produce documents in response to
10:07:57  25   document requests.  We just don't -- and then once plaintiff
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 8 of 16 PageID #: 279
Case 1:18-cv-00856-RGA Document 24 Filed 01/30/19 Page 7 of 15 PageID #: 251

7

| | | |
|---|---|---|
| 10:08:04 | 1 | and plaintiff's counsel has those, then they are able to |
| 10:08:07 | 2 | review them. And the way that we wrote this was that they |
| 10:08:11 | 3 | look at it, say, We think we need something else, and then |
| 10:08:15 | 4 | we meet and confer and discuss what additional information |
| 10:08:20 | 5 | they think they need. But I don't think they're going to |
| 10:08:24 | 6 | have any additional information that they need. |
| 10:08:27 | 7 | THE COURT: So when under this schedule would |
| 10:08:32 | 8 | you imagine under your view of things, the primary |
| 10:08:40 | 9 | documentation, if you will, has been produced and so to |
| 10:08:47 | 10 | speak the clock is running on the parties figuring out |
| 10:08:51 | 11 | whether the plaintiff or, for that matter, I suppose the |
| 10:08:54 | 12 | defendant needs anything else? |
| 10:08:57 | 13 | MR. SACKSTEDER: The core technical document |
| 10:09:00 | 14 | production is due under the Scheduling Order March 21st of |
| 10:09:04 | 15 | this year. You know, the production of other documents |
| 10:09:09 | 16 | depends on what we get asked for, I suppose, but I would |
| 10:09:14 | 17 | think that it would happen sometime, you know -- we would be |
| 10:09:18 | 18 | in a position maybe late summer for plaintiffs to take a |
| 10:09:23 | 19 | look and say whether or not they think they need additional |
| 10:09:27 | 20 | materials. |
| 10:09:29 | 21 | THE COURT: Mr. Seal, what's your idea of what |
| 10:09:43 | 22 | the damages are likely to be in this case? |
| 10:09:46 | 23 | MR. SEAL: We expect damages would be north of 5 |
| 10:09:51 | 24 | million, perhaps considerably more. |
| 10:09:53 | 25 | THE COURT: Okay. Is the defendant or some of |

```
10:10:01   1    the defendants, because I gather one of them is maybe not a
10:10:04   2    U.S. company, are they publicly held?
10:10:09   3             MR. SACKSTEDER:  No, Your Honor.  They are
10:10:11   4    publicly held by a publicly-held company, I believe.  They
10:10:15   5    are held by a publicly-held company.
10:10:17   6             THE COURT:  All right.  And the publicly-held
10:10:19   7    company, is that a foreign company or --
10:10:21   8             MR. SACKSTEDER:  No.
10:10:21   9             THE COURT:  -- some other company beyond that?
10:10:24  10             MR. SACKSTEDER:  It is -- there is -- it's
10:10:28  11    another game company that owns them.  It's not one of the
10:10:31  12    defendants.
10:10:32  13             THE COURT:  All right.  Is it a secret who that
10:10:34  14    game company is?
10:10:35  15             MR. SACKSTEDER:  No.  It's Activision.
10:10:36  16             THE COURT:  Okay.  So I think I have Activision
10:10:38  17    in some other case right now.  They make a zillion dollars;
10:10:43  18    right?
10:10:44  19             MR. SACKSTEDER:  I can't -- I don't represent
10:10:47  20    Activision, so I can't answer that question.
10:10:50  21             MR. BLUMENFELD:  It is in the billions, Your
10:10:52  22    Honor.
10:10:52  23             THE COURT:  Okay.  Right.
10:10:53  24             MR. BLUMENFELD:  A zillion may be a little high.
10:10:56  25             THE COURT:  I didn't mean that as literally
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 10 of 16 PageID #: 281
Case 1:18-cv-00336-RGA Document 24 Filed 01/30/19 Page 9 of 15 PageID #: 253

9

10:10:57  1   true.
10:10:58  2              MR. SACKSTEDER:  I had a false advertising case
10:11:01  3   once where that was an issue as to what is a zillion.
10:11:05  4              THE COURT:  Okay.  Well, when I was looking at
10:11:14  5   this online, I'm looking at the physical copy I have here,
10:11:17  6   and there is a summary of deadlines with a long string of or
10:11:24  7   long page of different dates, and times, and things.  I had
10:11:28  8   thought, and perhaps I had thought incorrectly from looking
10:11:31  9   at this, that regardless of what I did about this proposal,
10:11:36 10   everything else was agreed to.
10:11:38 11              Am I misunderstanding?
10:11:41 12              MR. SACKSTEDER:  I think, Your Honor, the same
10:11:42 13   disagreement is the disagreement that's reflected in the
10:11:45 14   schedule.
10:11:47 15              THE COURT:  So, in other words, what I've got
10:11:49 16   here, what's in the body here is one side's proposal, and
10:11:54 17   what's the other side's proposal is in the addendum, so to
10:11:58 18   speak?
10:11:58 19              MR. SEAL:  No, Your Honor. What's in the
10:12:00 20   addendum is the list of dates that are contained in the
10:12:03 21   body.  And where there are disagreements on dates in the
10:12:06 22   addendum, it's related to the ESI provisions.
10:12:12 23              MR. SACKSTEDER:  All the other --
10:12:13 24              THE COURT:  Oh, I see.  The rest of this --
10:12:16 25   there's so many different things I hadn't realized.

```
10:12:18  1              What you're saying is all the things, other than
10:12:20  2   what says plaintiff's proposal, defendants' proposal,
10:12:23  3   they're the only points of disagreement; everything else is
10:12:25  4   actually agreed?
10:12:26  5              It's just there's so many different things, I
10:12:28  6   thought it was one side's proposal and then the other
10:12:32  7   side's.  But I'm wrong.
10:12:32  8              MR. SACKSTEDER:  That's correct.
10:12:33  9              THE COURT:  Okay.  I take it from what I have,
10:12:47 10   there is not a claim of willful infringement in the case?
10:12:49 11              MR. SACKSTEDER:  There was initially, Your
10:12:51 12   Honor, and Your Honor struck it in a response to our motion
10:12:54 13   to dismiss.
10:12:54 14              THE COURT:  Okay.  All right.
10:12:58 15              All right.  So it seems to me, without knowing
10:13:04 16   for sure how much damages we're actually talking about here,
10:13:08 17   but it seems to me that, honestly, plaintiff's proposal
10:13:19 18   seems to be more onerous than is necessary for plaintiff to
10:13:36 19   get what they need to pursue this case.
10:13:44 20              I'm sorry.  Let me just ask:  So does Groove
10:13:47 21   Digital -- I didn't notice this, one way or another -- do
10:13:50 22   they make some product?
10:13:51 23              MR. SEAL:  They do not at present, Your Honor,
10:13:53 24   no.
10:13:53 25              THE COURT:  Okay.  So basically most of the
```

10:13:56  1   ==discovery is going to be of the defendant and not the==
10:13:59  2   ==defendant taking discovery of the plaintiff?==
10:14:00  3                   ==MR. SEAL:  That's true.==
10:14:01  4                   ==THE COURT:  All right.  Well, so I think that==
10:14:06  5   ==plaintiff's proposal exceeds probably what is necessary, but==
10:14:17  6   ==I also think -- hold on a minute.==
10:14:55  7                   So Mr. Sacksteder, plaintiff's proposal seems to
10:14:59  8   have two parts, B and C.  The B part that says, If you use
10:15:05  9   search terms to locate potentially response to the ESI, it
10:15:10 10   shall disclose the search terms to the requesting party on
10:15:12 11   or about August 23rd.  Is it the possibility that you will
10:15:22 12   use some search terms to locate something?
10:15:25 13                   MR. SACKSTEDER:  I think that that is part of
10:15:29 14   what is in the schedule as a date to be determined, if
10:15:33 15   necessary, for us.  I suppose it's possible.
10:15:37 16                   I think it's more likely and more efficient to
10:15:40 17   go to the people who know.  You know, these are the kinds of
10:15:43 18   things that are typically kept on what's called a wiki at a
10:15:47 19   company or some sort of shared electronic repository that
10:15:51 20   says, Okay, whatever this feature is -- and we still don't
10:15:54 21   know what the accused feature is -- but whatever this
10:15:56 22   feature is, you know, where are the documents kept?  And
10:16:00 23   then we go, and we find the documents that describe them.
10:16:03 24   Typically the requirements for putting them into the
10:16:07 25   product, and the development requirements for implementing

```
10:16:11  1   what needed to be done.  And it's a little more efficient to
10:16:16  2   do that then to just do search terms.
10:16:19  3                THE COURT:  Okay.  So what you're saying, I
10:16:20  4   think, is that you're not really anticipating right now that
10:16:26  5   plaintiff's proposal, if I adopted it, that paragraph B
10:16:31  6   really would impact you because you're expecting that since
10:16:39  7   that's an if the producing party elects, you're expecting
10:16:42  8   that you probably are not going to elect?
10:16:45  9                MR. SACKSTEDER:  That's my sense right now.  If
10:16:46 10   we can't find documents doing it the old-fashioned way, we
10:16:50 11   might have to do electronic search terms.  But I think it
10:16:55 12   makes more sense to start with speaking to a few persons and
10:17:01 13   finding out where the materials are kept.
10:17:02 14                THE COURT:  So here's what I was thinking:  The
10:17:05 15   only thing that concerns me about the defense proposal here
10:17:10 16   is the possibility of delay.  So I think that it actually
10:17:27 17   would be useful to put in paragraph B, recognizing the
10:17:33 18   answer may be, sorry, didn't do any, but at least it gives a
10:17:40 19   date for that to be done by.
10:17:43 20                And maybe then defendants' proposal could be --
10:17:53 21   maybe it needs to have some slight wording change, but then
10:17:56 22   to go with that.  Basically sometime after August 23rd would
10:18:02 23   be when you would figure out whether or sometime -- yeah,
10:18:07 24   starting no later than August 23rd would be when you figure
10:18:11 25   out whether or not there's other things that need to be
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 14 of 16 PageID #: 285
Case 1:18-cv-00656-RGA Document 24 Filed 01/30/19 Page 13 of 15 PageID #: 257

13

```
10:18:14   1              searched for.
10:18:16   2                        And hopefully you can resolve that
10:18:26   3              cooperatively.  But if not, you can come see me.
10:18:28   4                        Okay?
10:18:29   5                        MR. SEAL:  Okay, Your Honor.
10:18:31   6                        MR. SACKSTEDER:  Understood, Your Honor.  One
10:18:33   7    question about Roman Number II of C on the following page
10:18:37   8    talks about searching emails and other ESI which, you know,
10:18:41   9    the emails part is inconsistent with our proposal below.
10:18:46  10              And I just wanted to make it clear that that
10:18:49  11    particular part wasn't part of what we were agreeing to; is
10:18:54  12    that correct?
10:18:55  13                        THE COURT:  I think basically I would be
10:19:01  14    crossing out paragraph C.
10:19:04  15                        MR. SACKSTEDER:  Okay.
10:19:04  16                        THE COURT:  And so basically if you do something
10:19:11  17    that implicates paragraph B, then you shall disclose that to
10:19:15  18    the plaintiff on or before August 23rd.  Okay?
10:19:20  19                        MR. SACKSTEDER:  Okay.  Understood.  Thank you.
10:19:21  20                        THE COURT:  All right.  So I have proposed dates
10:19:23  21    here for claim construction.  The hearing on claim
10:19:36  22    construction, paragraph 9, April 9th of 2020 at 9:00 a.m.
10:19:47  23    In paragraph 13, the pretrial conference, August 20th of
10:19:54  24    2021 at 9:00 a.m.  And paragraph 16, the trial,
10:20:05  25    September 13th of 2021.
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 15 of 16 PageID #: 286
Case 1:18-cv-00836-RGA Document 24 Filed 01/30/19 Page 14 of 15 PageID #: 256

14

```
10:20:14  1                   I haven't actually checked my calendar for
10:20:20  2    religious holidays during that time period.  I'm not sure
10:20:24  3    they would actually be on my calendar.
10:20:26  4                   So there's a Jewish holiday on September 15th.
10:20:44  5    Is that likely to be an issue?
10:20:47  6                   MR. SACKSTEDER:  Not from my trial team as it's
10:20:50  7    currently composed.  I don't know about witnesses for my
10:20:53  8    client.
10:20:53  9                   MR. SEAL:  No issues as far as plaintiff is
10:20:55 10    concerned, Your Honor.
10:20:56 11                   THE COURT:  Okay.  Well, obviously, I don't make
10:21:00 12    anybody do things on religious holidays.  If it turns out to
10:21:06 13    be a problem, or you think about it, just don't wait until
10:21:11 14    August of 2021 to tell me about it.  Okay?
10:21:14 15                   All right.  So anything else you want to discuss
10:21:19 16    while you're here?
10:21:21 17                   MR. SACKSTEDER:  Nothing from -- I guess I'm
10:21:24 18    going first.  Go ahead.
10:21:25 19                   MR. SEAL:  Nothing from plaintiff.
10:21:25 20                   THE COURT:  Well, Mr. Seal was shaking his head
10:21:27 21    no.
10:21:28 22                   MR. SACKSTEDER:  Okay.  I must have felt that.
10:21:30 23                   Nothing from defendants.  We do intend to file
10:21:34 24    an IPR --
10:21:35 25                   THE COURT:  Okay.
```

Case 1:18-cv-01216-MN Document 43-2 Filed 05/06/20 Page 16 of 16 PageID #: 287
Case 1:18-cv-00856-RGA Document 24 Filed 01/30/19 Page 15 of 15 PageID #: 255

15

10:21:35  1                MR. SACKSTEDER:  -- in the fairly new future,
10:21:37  2   and we'll bring that to the Court's attention when and if
10:21:40  3   appropriate.
10:21:41  4                THE COURT:  Okay.  Yeah.  Generally speaking,
10:21:46  5   unless it's actually instituted, I'm unlikely to be doing
10:21:52  6   anything.
10:21:53  7                MR. SACKSTEDER:  That's my understanding.
10:21:54  8                THE COURT:  Okay.  All right.
10:21:55  9                Well, thank you very much.  Oh, you know what, I
10:21:59 10   did sign this, but it's occurring to me since I've asked you
10:22:02 11   to -- can I actually ask that you just resubmit it, and then
10:22:08 12   I will sign it then?
10:22:10 13                MS. PASCALE:  We can do that, Your Honor.
10:22:12 14                (Everyone said, Thank you, Your Honor.)
10:22:13 15                (Scheduling conference was concluded at 10:22
         16   a.m.)
         17                I hereby certify that the foregoing is a true
         18   and accurate transcript from my stenographic notes in the
         19   proceeding.
         20                          /s/ Heather M. Triozzi
                                     Official Merit Reporter
         21                          U.S. District Court
         22
         23
         24
         25