# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>LG ELECTRONICS U.S.A. and<br>LG ELECTRONICS INC.,<br><br>        Defendants. | C.A. No. 18-1217-MN<br><br>STIPULATED ORDER REGARDING DEFAULT STANDARD FOR DISCOVERY, INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI") |

    **1.**    **Purpose.**  This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

    **2.**    **General Provisions.**

    **[Defendants' Proposal: a.    Ediscovery limitations.  The parties will not conduct a search and production of electronic mail initially.  If, at such a time as the receiving party has reviewed the contents of the producing party's primary document production, third-party document productions and deposition testimony, the receiving party determines that electronic-mail discovery is necessary, the receiving party may indicate such determination to the producing party.  Upon such determination, the producing party and receiving party shall meet and confer in good faith to identify which specific issues and which particular electronic-mail sources will be searched and to identify reasonable mechanisms for narrowly tailored searches of, or for, such electronic-mail discovery.  Should the parties be unable to reach an agreement on these issues, the**

**requesting party must submit a five-page letter brief to the Court explaining the need for electronic-mail discovery. Unless ordered otherwise, the collection, search, and production of electronic mail shall be limited to non-technical topics and shall be limited to custodians identified by the producing party as likely to have electronic mail relevant to those topics. There shall be no electronic-mail discovery for technical topics and technical custodians.]**

    **b.**   **Cooperation.** Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36. In the event that the parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the parties reach agreement.

    **c.**   **Proportionality.** Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

    **d.**   **Preservation of Discoverable Information.** A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

    (i)   Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

(ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

  **e. Privilege.**

    (i) The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

    (ii) With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

    (iii) Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

**3. Initial Disclosures.** Within 30 days after the Rule 16 Conference or within a timeframe to be established, each party shall disclose:

  **a. Custodians.** Up to 5 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.[2]

  **b. Non-custodial data sources.**[3] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

  **c. Notice.** The parties shall identify any issues relating to:

---

[2] As these disclosures are "initial," each party shall be permitted to supplement.
[3] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

(i) Any additional sources of ESI not identified in Schedule A (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

(iii) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws. Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

4. **Follow-Up Discovery in Patent Litigation.**

a. Absent a showing of good cause, follow-up discovery to the discovery set forth in Paragraphs 7(a) to (d) of Scheduling Order, D.I. 29, shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

5. **Specific E-Discovery Issues.**

a. **On-site inspection of electronic media.** Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

b. **Search methodology.**

(i) If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product

and company names), shall be employed. The parties shall meet and confer on any modifications to the proposed terms needed to improve their efficacy in locating discoverable information and in excluding information that is not discoverable under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) [**Defendants' Propsoal: if appropriate,**] the emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

(ii) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, WAV, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), or Program Installers.

(iii) Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate"

5

email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-deduplication.

        **c.**     **Format.** ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or Tiff). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable the revision history. The parties shall produce their information in the following format: single page TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite information including relevant metadata.

        **d.**     **Native files.** The only files that should be produced in native format are files not easily converted to image format, such as Excel and Access files.

        **e.**     **Metadata fields.** The parties are only obligated to provide the following metadata for all ESI produced , to the extent such metadata exists: Custodian, File Path, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

    **f.**  **Source Code.**  No provision of this Order affects any inspection of source code that is responsive to a discovery request and will be made available consistent with the protective order governing this case.

  **6.**  **Modification.**

  This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.  Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

| | |
|---|---|
| Dated: March ___, 2020 | **FARNAN LLP** |
| *Of Counsel:* | */s/ Brian E. Farnan* |
| | Brian E. Farnan (Bar No. 4089) |
| Sandeep Seth | Michael J. Farnan (Bar No. 5165) |
| | 919 N. Market Street, 12th Floor |
| **SethLaw** | Wilmington, DE 19801 |
| Two Allen Center | Telephone: (302) 777-0300 |
| 1200 Smith Street, Ste. 1600 | Fax: (302) 777-0301 |
| Houston, TX 77002 | bfarnan@farnanlaw.com |
| Telephone: (713) 244-5017 | mfarnan@farnanlaw.com |
| Facsimile: (713) 244-5018 | |
| ss@sethlaw.com | |
| | |
| Robert J. Yorio | |
| **Carr & Ferrell LLP** | |
| 120 Constitution Drive | |
| Menlo Park, California 94025 | *Attorneys for Plaintiff* |
| Telephone No.: (650) 812-3400 | *Sentius International, LLC* |
| Facsimile No.: (650) 812-3444 | |
| yorio@carrferrell.com | |
| | |
| Dated: March ___, 2020 | **RICHARDS, LAYTON & FINGER, P.A.** |
| *Of Counsel:* | */s/ Alexandra M. Ewing* |
| | Frederick L. Cottrell, III (Bar No. 2555) |
| Jonathan K. Waldrop | Jason J. Rawnsley (Bar No. 5379) |
| Darcy L. Jones | Alexandra M. Ewing (Bar No. 6407) |
| Marcus A. Barber | One Rodney Square |
| John W. Downing | 920 N. King Street |
| **KASOWITZ BENSON TORRES LLP** | Wilmington, DE 19801 |
| 333 Twin Dolphin Drive, Suite 200 | Telephone: (302) 651-7700 |
| Redwood Shores, California 94065 | cottrell@rlf.com |
| Telephone: (650) 453-5170 | rawnsley@rlf.com |
| jwaldrop@kasowitz.com | ewing@rlf.com |
| djones@kasowitz.com | |
| mbarber@kasowitz.com | *Attorneys for Defendants* |
| jdowning@kasowitz.com | *LG Electronics U.S.A. and LG Electronics Inc.* |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____   _____
The Honorable MaryEllen Noreika
United States District Judge

# SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Automatically saved versions of documents and emails.

6. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

7. Voice messages.

8. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

9. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

10. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

11. Logs of calls made from mobile devices.

12. Server, system or network logs.

13. Video and audio recordings.

14. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

15. Data remaining from systems no longer in use that is unintelligible on the systems in use.

16. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.