# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ADVANCED MICROSCOPY,    )
INC.,                   )
                        )
        Plaintiff,      )   C.A. No. 15-00516-LPS-CJB
                        )
v.                      )
                        )
CARL ZEISS MICROSCOPY,  )
LLC,                    )
                        )
        Defendant.      )

             Monday, October 19, 2015
             3:30 p.m.
             Room 2325


             844 King Street
             Wilmington, Delaware


BEFORE:  THE HONORABLE CHRISTOPHER J. BURKE
      United States District Court Judge



APPEARANCES:



        FARNAN, LLP
        BY:  BRIAN E. FARNAN, ESQ.

                    Counsel for the Plaintiff

1  APPEARANCES CONTINUED:

2

3       DUANE MORRIS, LLP
        BY:  RICHARD L. RENCK, ESQ.
        BY:  ARTHUR M. DRESNER, ESQ.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1    Defendant's side, less than 10 or right at that
2    number?  And is there any sense as to whether
3    there is, in fact, any Plaintiff representatives
4    who will likely have their e-mail be requested
5    to be searched from the Defendant's side?
6               MR. FARNAN:  I don't see us
7    exceeding 10.  My hope it would be less.  I
8    mean, we're Plaintiffs, so we don't like to read
9    a lot of documents, we don't want to spend a lot
10   of time going through e-mails we don't need to
11   look at.  So I think once the relevant
12   custodians are identified, that's all we'll
13   seek.  That number is going to depend on the
14   information we get.  But I don't see us ever
15   coming back asking for more than 10.  I doubt
16   it's going to reach 10.  From our side it's
17   going to be few, probably likely one or two at
18   most.  But that's just the nature of the
19   business.  But we also have all the burdens in
20   the case when it comes to infringement and
21   figuring the stuff out.  That doesn't mean we
22   shouldn't get the discovery.
23              MR. DRESNER:  That troubles us,
24   Your Honor.  Plaintiff's custodians are going to
```

```
1    be in the neighborhood of one or two and, you
2    know, by the very nature of the fact that we are
3    a large organization, we have at least 10.  So
4    it's highly unbalanced, but if we can get the
5    number down, as I said, we'd be less
6    objectionable.
7                    THE COURT:  Okay.  Well, on this
8    issue, at least with regard to the setting of a
9    schedule, I am not going to adopt the defense
10   proposal.  And I say that for a couple reasons.
11   First because I think it's correct that the
12   default standard here was proposed as a way, in
13   the first instance, to try to manage some of the
14   concerns of the kind that Defendants are raising
15   with respect to ESI related discovery, including
16   e-mail discovery.  It does provide some
17   limitations that should, at least as a default,
18   narrow the potential imbalance in burden.  And
19   it might well be the case that after further
20   negotiations between the parties that that
21   imbalance will be further narrowed still.  But
22   as an initial matter, I think the default
23   standard contemplates that e-mail discovery is a
24   form of discovery that can be pursued.  And can
```

1  be relevant just as documentary discovery is
2  potentially relevant of the non ESI kind.  And
3  for me, at this stage, with the relatively
4  little information I have, other than the sense
5  of the respective imbalance in size of the two
6  parties, to say that no e-mail is permitted
7  unless there is a showing by the Plaintiff that
8  it is particularly useful, I think would be
9  contrary to the, to the ethos of the default
10 standard and also I think it would just put too
11 much of a burden on the Plaintiff at this early
12 stage.
13              Now, all that said, look, I mean I
14 think Defendant has articulated some concerns
15 with respect to size and imbalance between the
16 parties.  You know, if there are discovery
17 related disputes, if the Defendant believes the
18 Plaintiff is making requests with respect to
19 discovery that are outsized in scope, can the
20 Defendant raise that respective imbalance as a
21 factor the Court could consider?  I'm sure it
22 could.  But again, in the first instance I don't
23 see any reason at this stage to grant the
24 Defendant's proposal and so I'm going to deny

1     it.  I'll go with the Plaintiff's proposal which
2     is that it not be included here.  I should also
3     say were I to grant the Defendant's proposal, it
4     would mean that in almost every case with
5     respect to a smaller entity on the Plaintiff's
6     side or a non-practicing entity and a larger
7     corporation on the other side, I would in
8     essence have to grant it.  And again, I don't
9     think that's consistent with -- the Court was
10    certainly aware of the fact that there are
11    plenty of Plaintiffs here in the District that
12    are non practicing entities when it set the
13    default standard, but didn't see fit to, as a
14    default matter, to preclude e-mail related
15    discovery in the first instance.  So I think for
16    all those reasons I'm going to deny the
17    Defendant's request.  And so we have I think
18    rulings that will allow us to provide a revised
19    proposed schedule by Friday of this week and the
20    Court, when it gets that, will be prepared to
21    enter it then or no later than on Monday.
22                  Now, that said, I know we've
23    talked about the disputes that relate to the
24    schedule that the parties discussed.  Is there