# EXHIBIT D

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF DELAWARE


SPRINT COMMUNICATIONS      )
COMPANY, L.P.,             ) Civil Action No.
           Plaintiff,      ) 18-1752-RGA
                           )
v.                         )
                           )
CEQUEL COMMUNICATIONS,     )
LLC, D/B/A SUDDENLINK      )
COMMUNICATIONS AND CSC     )
HOLDINGS, LLC D/B/A        )
OPTIMUMCABLEVISION,        )
           Defendants.)




              Wednesday, June 19, 2019
              10:00 a.m.


              844 King Street
              Wilmington, Delaware


BEFORE:  THE HONORABLE SHERRY R. FALLON
         United States Magistrate Judge



APPEARANCES:


    POLSINELLI PC
    BY:  CHRISTINA M. BELITZ, ESQ.

         -and-

    SHOOK HARDY & BACON
    BY:  RYAN DYKAL, ESQ.
    BY:  SAMUEL LaROQUE, ESQ.

            Counsel for the Plaintiff
```

```
 1      APPEARANCES, CONTINUED:

 2
            RICHARDS LAYTON & FINGER, PA
 3          BY:  FREDERICK L. COTTRELL, III, ESQ.

 4                   -and-

 5          GIBSON, DUNN & CRUTCHER
            BY:  KATE DOMINGUEZ, ESQ.
 6          BY:  FLORINA YEZRIL, ESQ.

 7                   Counsel for the Defendants
```

```
 1                    THE COURT:  Putting that aside
 2     for the moment, with respect to the search
 3     terms themselves, does the language that has
 4     not been boldfaced in paragraph 6 reflect the
 5     language lifted from the default standard?
 6                    MR. DYKAL:  I would have to take
 7     another look, but I believe so.  If not the
 8     exact wording, the spirit.  Again, this is the
 9     sort of language that we have in the ESI
10     stipulations in the other six related cases, so
11     it may have come from there, it may have come
12     from the default standard.
13                    THE COURT:  In any event, the
14     non-boldface language in proposed paragraph 6
15     is the language that's not controversial
16     between parties?
17                    MR. DYKAL:  I believe that's
18     correct.
19                    THE COURT:  And defendants can
20     speak to this when they have the opportunity.
21     And then let me ask one last question before I
22     hear from the defendants on this.  Would
23     Sprint -- in terms of relief, is Sprint
24     comfortable if the Court were to consider
```

```
 1    allowing email searches to go on alongside of
 2    document discovery?  Does Sprint have any
 3    issue -- and if it does, I'll hear you on it --
 4    with respect to potentially restricting that
 5    email discovery to the topics of willfulness
 6    and equitable estoppel only, without prejudice,
 7    of course, should discovery --as it is a
 8    rolling, ongoing process -- it's without
 9    prejudice for Sprint to seek further production
10    of custodial emails on additional topics if you
11    can demonstrate to the Court that that would be
12    a worthwhile path to pursue?
13                MR. DYKAL:  Sprint generally
14    would be okay with that.  The one caveat I have
15    is that there are other affirmative defenses
16    that are similar to equitable estoppel that may
17    require some email discovery and there may be
18    some overlap there.
19                ==The one thing I do know Sprint
20    would be okay with is foregoing email
21    collection on technical issues without
22    prejudice.==  If Sprint discovered that emails
23    became pertinent to some technical aspect, we
24    would at least like the chance to follow up.
```

```
 1    just wanted to point out that counsel was just
 2    pointing you to the second bolded language in
 3    paragraph 6, but omitting or forgetting the
 4    first bolded language in paragraph 6, that's at
 5    the bottom of page 2, where it says the parties
 6    shall then meet and confer by July 19, 2019 to
 7    attempt to reach agreement on the identities of
 8    custodial collection.  So this is getting at
 9    the exact problem that your Honor identified,
10    which is affirmatively building in a duty on
11    the part of the parties to reach agreement,
12    have a meet-and-confer process, that is
13    unnecessary.
14                    And, as your Honor pointed out,
15    in the natural course of things, if we disclose
16    our custodians as the default standard
17    contemplates and they are manifestly
18    unreasonable, then Sprint will naturally raise
19    that.  But to build in in advance a requirement
20    for a meet-and-confer and a requirement for an
21    agreement I think builds in hours of telephone
22    calls between the parties, and Lord knows how
23    much money spent on that, when it may not be
24    necessary and it just adds burden.
```

```
 1                    THE COURT:  All right.  Any
 2    further comment?
 3                    MR. DYKAL:  Yeah.  We would be
 4    okay with dropping the requirement for that
 5    early meet-and-confer.
 6                    THE COURT:  So I can strike from
 7    the first paragraph under paragraph 6 Sprint's
 8    proposal that the parties shall then meet and
 9    confer by July 19, 2019, et cetera, right?
10                    MR. DYKAL:  Yes.  We can strike
11    that.  And to be clear, Sprint is not
12    discounting the necessity of some sort of
13    cooperative process.  And maybe that will
14    involve a meet-and-confer, but we don't need
15    one mandated in the ESI stipulation, if that's
16    the concern.  Thank you.
17                    THE COURT:  All right.  So here's
18    my ruling on both of these issues that will
19    affect paragraph 6 and 8 of the proposed order.
20    I am not going to necessarily stage the
21    searching and production of emails, but I will
22    go along with the non-boldfaced language in
23    paragraph 6.  And furthermore, I will put
24    limits on email discovery which is limited to
```

```
 1    the topics identified by the plaintiff, the two
 2    topics of willfulness and equitable estoppel.
 3                    With respect to plaintiff's
 4    request that there may be other affirmative
 5    defenses in the defendant's pleadings that
 6    would necessitate review and production of
 7    emails, I'm going to deny that without
 8    prejudice at this time.  Specific affirmative
 9    defenses have not been argued to the Court
10    today.  It's hard for the Court to speculate as
11    to what might be needed if I were to pull up
12    the affirmative defenses from the pleading at
13    this moment.  I feel that that's an argument
14    for another time, another day.
15                    And I will also affirmatively
16    state in limiting the scope of the email
17    discovery that in accordance with plaintiff's
18    representation that they are foregoing email
19    collection on technical issues without
20    prejudice, that that will also be a limitation
21    on the email searches.
22                    Of course, this ruling is without
23    prejudice to further production of custodial
24    emails on additional topics if other forms of
```

1   discovery or the email productions within these
2   limits demonstrate the need for broader
3   discovery.
4                   So the way this will work -- and
5   in terms of the custodians, you know, the
6   default standard applies.  Plaintiffs don't get
7   to meet and confer, and I think they've
8   indicated you're not seeking another layer of
9   meeting and conferring.  But the defendants
10  will select the custodians, and if the
11  plaintiffs have an issue with that selection,
12  the normal course in the discovery dispute
13  resolution process will occur.  There will be a
14  meet-and-confer process.
15                  And if agreement is not reached
16  by September 20th of 2019 regarding Sprint's
17  request, if there is any, to search additional
18  custodians or specific custodians not on
19  defendant's original list, then the parties can
20  come back to the Court and seek clarification
21  on whether or not that search should be
22  broadened to include additional custodian or
23  custodians.
24                  So I think that issue is fully

1   resolved by striking Sprint's proposal in the
2   first paragraph of paragraph 6 on page 2.  And
3   then with respect to the boldfaced language,
4   that boldface language that continues in that
5   paragraph on page 3, we can strike regarding --
6   well, I guess it doesn't matter.  We can leave
7   that in.  The only other limitation we need to
8   put in is that the producing parties shall
9   search emails relating to willfulness,
10  equitable estoppel, and forego email collection
11  on technical issues.  And then if you want a
12  footnote that these limitations are without
13  prejudice for a requesting party to seek
14  broader discovery in accordance with the
15  Court's standard dispute resolution processes.
16              I think those modifications will
17  take care of that.  Let me ask Ms. Dominguez,
18  am I missing anything?  Is there anything
19  further the defendants feel that they would
20  need in paragraph 6 consistent with my ruling?
21              MS. DOMINGUEZ:  Thank you, your
22  Honor.  I would just add, and your Honor can
23  choose the particular language, but right now,
24  the language that you suggested implies that

```
 1      State of Delaware)
                         )
 2      New Castle County)

 3

 4                   CERTIFICATE OF REPORTER

 5

 6           I, Jennifer M. Guy, Registered
 7      Professional Reporter and Notary Public in the
 8      State of Delaware, do hereby certify that the
 9      foregoing record, Pages 1 to 71 inclusive, is a
10      true and accurate record of the above-captioned
11      proceedings held on the 19th day of June, 2019,
12      in Wilmington.
13           IN WITNESS WHEREOF, this 25th day of June,
14      2019, at Wilmington.
15
16
17
18                   /S/  Jennifer M Guy, RPR
                     Jennifer M. Guy, RPR
19
20
21      DATED:  June 25, 2019
22
23
24
```