IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SENTIUS INTERNATIONAL, LLC,    )
                               )
         Plaintiff,            )
                               ) C.A. No. 18-1216-MN
v.                             )
                               )
HTC CORPORATION,               )
                               )
         Defendant.            )
_____)
SENTIUS INTERNATIONAL, LLC,    )
                               )
         Plaintiff,            )
                               ) C.A. No. 18-1217-MN
v.                             )
                               )
LG ELECTRONICS U.S.A., INC.,   )
et al.,                        )
                               )
         Defendants.           )

                    Tuesday, May 12, 2020
                    11:00 a.m.
                    Teleconference

                    844 King Street
                    Wilmington, Delaware

BEFORE:   THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge


APPEARANCES:

          FARNAN LLP
          BY:  BRIAN FARNAN, ESQ.
          BY:  ROSEMARY PIERGIOVANNI, ESQ.

          -and-

          CARR & FERRELL LLP
          BY:  ROBERT J. YORIO, ESQ.

                    Counsel for the Plaintiff

```
                                                    2
  1   APPEARANCES CONTINUED:

  2

  3
              RICHARDS LAYTON & FINGER, PA
  4           BY:   FREDERICK COTTRELL, ESQ.
              BY:   JASON RAWNSLEY, ESQ.
  5
              -and-
  6
              KASOWITZ BENSON TORRES LLP
  7           BY:   JOHN W. DOWNING, ESQ.
              BY:   MARCUS A. BARBER, ESQ.
  8
                         Counsel for the Defendants
  9                      LG Electronics U.S.A., et al.

 10

 11           POTTER ANDERSON & CORROON
              BY:   STEPHANIE O"BYRNE, ESQ.
 12
              -and-
 13
              WILLIAMS SIMONS & LANDIS
 14           BY:   JOHN WITTENZELLNER, ESQ.

 15                      Counsel for the Defendant
                         HTC Corporation
 16

 17

 18                       - oOo -

 19                 P R O C E E D I N G S

 20           (REPORTER'S NOTE:   The following telephone

 21   conference was held remotely, beginning at 11:00 a.m.)

 22

10:51:21 23

10:59:25 24           THE COURT:   Good morning, counsel.   Who is

11:00:17 25   there, please?
```

```
11:00:20  1              MR. FARNAN:  Good morning, Your Honor.  Brian
11:00:22  2   Farnan and Rosemary Piergiovanni from Farnan.  And also Bob
11:00:26  3   Yorio from Carr & Ferrell for plaintiff.
11:00:28  4              THE COURT:  Okay.  Welcome.
11:00:30  5              MR. COTTRELL:  Good morning, Your Honor.  Fred
11:00:32  6   Cottrell from Richards Layton for the LG defendants.  Jason
11:00:37  7   Rawnsley from my office is also on.  And our co-counsel from
11:00:41  8   Kasowitz Benson, John Downing and Marcus Barber.  And
11:00:47  9   Mr. Downing will be presenting for LG.
11:00:50 10              THE COURT:  Okay.  Welcome to all of you as
11:00:53 11   well.
11:00:53 12              MS. O'BYRNE:  Your Honor.
11:00:56 13              THE COURT:  Go ahead.
11:00:57 14              MS. O'BYRNE:  I apologize.  I just wanted to let
11:00:59 15   you know, this is Stephanie O'Byrne from Potter Anderson
11:01:03 16   also on the line for HTC Corporation.  And also joining us
11:01:07 17   is John Wittenzellner from Williams, Simons & Landis.
11:01:15 18              MR. WITTENZELLNER:  Good morning, Your Honor.
11:01:16 19              THE COURT:  Good morning.  Welcome to you as
11:01:18 20   well.  Thanks to everyone for getting on the phone with us
11:01:22 21   this morning.  I reviewed the letters that were sent
11:01:26 22   regarding the e-mail issue.  And I guess what I needed to
11:01:35 23   understand after reading the letters was why -- I read
11:01:46 24   Sentius's letter saying that this is the standard practice
11:01:50 25   in this Court, et cetera.  But it does appear that there is
```

only direct infringement at issue. It seems like that's a strict liability analysis where you look at the product and you look at the claims, and what I didn't see in your letter is why you need a substantial amount of e-mail discovery.

So let me hear first from Sentius on that issue. What is it that's relevant here in conducting a wholesale e-mail search?

MR. FARNAN: Good morning, Your Honor. Brian Farnan. I'll address Your Honor's question. E-mails will be relevant to several aspects of this case. I'll go by topic and within those topics. First infringement, and then we'll have damages, and then we'll have invalidity.

And defendant's proposal is e-mails are only relevant in cases where there is willful infringement. If that was the case, the majority of our cases we wouldn't have e-mail discovery. But the fact is in almost every case we have e-mail discovery. When you look at infringement, there will be discussions between personnel about the spellcheck feature who were tasked with designing and implementing the feature, there will be discussions between engineers about source code, why a certain source code was implemented and how it works. Source code is much easier showing a jury an e-mail explaining how it works than an expert walking through source code that a jury doesn't understand. There will be a discussion about how the

spellcheck operates.  There will be a discussion about when it was first added, chain of sense was added, and e-mails between the engineers and maybe discussions about the spellcheck features of competitors and why did they add the spellcheck feature.  When you get the damages, it will talk about the importance of the spellcheck feature as related to apportionment compared to other features, e-mails about customer demand and preferences for the spellcheck features.  There can be competitive e-mails.  There will be e-mails about the cost of the feature.  And when we get to invalidity, you get to they may contend in this case that the invention was obvious.  They could have e-mails saying that they could not find a solution to the problem, and now they're trying to say that the solution that we have in the patent and the claims was obvious.  And it will also go to second considerations, failure to monitor, skepticism, long-felt need.  And lastly, it will also go to knowledge.

We think e-mails, just like in every case in this district, there are a lot of relevant information.  And the important thing here to look at is the burden really is on defendants to show good cause.  They're trying to flip the burden and flip the whole discovery process.  They haven't submitted any declarations about how this would be unduly burdensome, how it would be costly.  Really we shouldn't have to describe how it's relevant under the

```
11:04:45  1   normal process until they met that burden.  We're happy to,
11:04:49  2   as we just articulated, why it's relevant.  They certainly
11:04:50  3   haven't shown good cause to deprive us something that the
11:04:54  4   rules allow us to have.
11:04:59  5               THE COURT:  Okay.  Let me hear from defendants.
11:05:05  6               MR. DOWNING:  Your Honor, may it please the
11:05:07  7   Court, John Downing from Kasowitz, Benson & Torres.  Just
11:05:13  8   responding quickly to plaintiff's opening, the amounts of
11:05:19  9   e-mail discovery contemplated basically would touch all
11:05:24 10   issues in the case and that would not be consistent with
11:05:28 11   Rule 26(b)(1).
11:05:32 12               Second, plaintiff referenced --
11:05:36 13               THE COURT:  I'm sorry.  Can you explain what you
11:05:38 14   mean by that?  I missed it.
11:05:42 15               MR. DOWNING:  Sure, Your Honor.  Rule 26(b)(1)
11:05:45 16   restricts discovery to any party's claims and defenses.  It
11:05:48 17   restricts totally to what's proportional to the needs of the
11:05:52 18   case and considers whether the burden or expense of the
11:05:54 19   proposed discovery outweigh the likely benefit.  So there is
11:05:58 20   nothing in the rule that suggest that default e-mail
11:06:01 21   discovery is required in every case on all issues.  In fact,
11:06:04 22   it suggest the opposite.
11:06:06 23               Second, Your Honor, the Delaware default ESI
11:06:12 24   order's first paragraph is called cooperation.  This
11:06:15 25   contemplates that the parties will discuss discovery issues
```

at the outset of the case with a view toward what is actually needed. And this is consistent with Federal Rule of Civil Procedure 26(f)(3), which instructs the parties to discuss what is needed for discovery, how to phase it and what limitations should be imposed, including specifically ESI.

So thinking about the scope and timing of e-mail discovery based on the claim, it is not radical or unprecedented, it's required by the rules and contemplated by the default ESI order in Delaware.

And then I would like to -- go ahead, Your Honor.

THE COURT: What I'm trying to understand is, are you saying no e-mail discovery at all, or that you would be willing after certain other discovery takes place, interrogatories, requesting people with knowledge, document production, that you would consider some requests for e-mail discovery if plaintiff can show that it's relevant?

MR. DOWNING: Absolutely, Your Honor. And that was addressed directly in our brief. We're not saying that e-mail discovery should never be contemplated in patent infringement lawsuits. We're just saying that we would like to know what specific issue requires e-mail discovery. Meet and confer about that issue. And then if there is a dispute, there is a possibility that we could address that

```
11:07:47  1   issue through deposition discovery, through an interrogatory
11:07:53  2   response or some other mechanism.  But to the extent that
11:07:57  3   the parties are unable to reach an agreement, then we could
11:08:01  4   initiate the Court's procedures and address it then.  But
11:08:05  5   just allowing e-mail discovery on every issue in the case
11:08:10  6   including all of them that plaintiff has identified on
11:08:13  7   today's call is not consistent with Rule 26(b)(1).
11:08:24  8            THE COURT:  Okay.  Anything from HTC's counsel
11:08:30  9   that you want to add?
11:08:34 10            MR. RAWNSLEY:  No, Your Honor.
11:08:36 11            THE COURT:  Anything further from you,
11:08:39 12   Mr. Farnan?
11:08:40 13            MR. FARNAN:  Yes, Your Honor, just three quick
11:08:42 14   points.  Counsel for LG mentions that their proposal is not
11:08:47 15   radical.  As we noted in our papers, there is no case that
11:08:50 16   supports their proposal, not one.  We cited a case directly
11:08:54 17   that supports our position.  And it's important to note here
11:08:57 18   that their proposal is to get just our talking about e-mail
11:09:01 19   discovery after deposition which the practice in this
11:09:04 20   district that happens the last three, four weeks of
11:09:07 21   discovery.  They're essentially saying there is no shot for
11:09:09 22   e-mail discovery in this case.  And they brush aside the
11:09:13 23   default as if that's the starting point.  The default is not
11:09:16 24   the starting point for E discovery.  The default was
11:09:19 25   designed for situations like this, and the purpose to find a
```

```
11:09:23  1   balanced solution if parties disagree and the default itself
11:09:27  2   has numerous limits.  This is not a case where we're saying
11:09:30  3   we want unlimited E discovery, which is often the case prior
11:09:34  4   to the default standard.  The default limits the number of
11:09:36  5   custodians to ten and, in fact here we're only seeking five.
11:09:39  6   It limits the search terms of receiving party's request
11:09:42  7   which is only ten.  So there are limits already imposed in
11:09:46  8   the default and on us, so this is not going to be a train
11:09:49  9   off the track.  And so we submit, with their lack of showing
11:09:55 10   good cause, the default standard and the case law, that
11:09:58 11   their proposal should be rejected.
11:10:01 12             THE COURT:  Okay.
11:10:03 13             MR. DOWNING:  Your Honor, if I may respond.
11:10:05 14             THE COURT:  Sure.
11:10:05 15             MR. DOWNING:  Thank you, Your Honor.
11:10:06 16             So I would just like to quickly address the
11:10:09 17   issue of cases.  We respectfully disagree that we haven't
11:10:14 18   provided case law to support our position.  The *Sprint,*
11:10:20 19   *Grove Digital* and *Radium* cases, all of them limit
11:10:22 20   willfulness to specific issues, nontechnical issues.  The
11:10:29 21   *Grove Digital* case delays until the primary documents are
11:10:31 22   reviewed and require narrowly tailored searches for
11:10:36 23   secondary documents if needed.  And then the *Radium* case
11:10:40 24   addresses good cause and also requires specific issues.  The
11:10:43 25   two *Advanced Microscopy* cases that are referenced in
```

plaintiff's letter brief are cases related to the same litigation campaign and they both involve willful infringement allegations.

Your Honor, if I may, I would just like to quickly address the plaintiff's argument that there is no good cause in this case. We don't agree that there is a good cause standard or injury to negotiate the ESI order in the case. Even if good cause is required, we feel like we have more than enough support in our letter brief to restrict discovery in the way that we have proposed. This case is a patent infringement allegation on a spellcheck feature on an accused mobile phone. The enhanced damages allegations were dropped from plaintiff's complaint in response to LG's first motion to dismiss. The patent expired in February 16th, 2014, so this case is about past damages from August 2012 to 2014.

Plaintiff's complaint concedes LG received notice of infringement allegation in February 2016, years after the patent expired and as we explained in our opening letter brief today, LG is producing e-mails on core technical documents. Taking all of this in account, there is more than sufficient good cause to support defendant's proposed ESI provision and require good cause before, and a meet and confer process before starting e-mail discovery.

THE COURT: Okay. Can you all give me a minute.

11:12:30  1    I just want to go back and look at something.

11:12:34  2                  (A brief recess was taken.)

11:16:19  3                  THE COURT:  Okay.  I think what I am going to do

11:16:29  4    is I'm going to deny the request for e-mail at this point.

11:16:32  5    I do agree with plaintiff that e-mail discovery is in the

11:16:35  6    ordinary course allowed in patent cases.  But I think that

11:16:39  7    this case presents some unique circumstances.  It involves

11:16:44  8    only direct infringement.  It involves expired patents with

11:16:47  9    a very limited damages period.  And here I think that the

11:16:52 10    burden and expense of wholesale e-mail discovery at the

11:16:56 11    outset seems to outweigh the benefits of conducting that

11:17:01 12    discovery.

11:17:02 13                  Now, that being said if after some document

11:17:06 14    discovery and interrogatory responses it appears that some

11:17:09 15    more limited e-mail discovery is appropriate, I expect

11:17:12 16    parties to discuss the issue and come to an agreement.  And

11:17:15 17    at that point, plaintiff should be able to articulate the

11:17:18 18    specific issues that it wants e-mail on with particular

11:17:24 19    search terms.

11:17:26 20                  Just to clarify, though, I take plaintiff's

11:17:30 21    point that if you're going to wait until after depositions

11:17:33 22    to discuss e-mail searches that that's going to be too late.

11:17:39 23    So I am not saying the discussions need to wait until after

11:17:42 24    depositions.  I think after some document discovery, after

11:17:48 25    some interrogatory responses, it should be clear whether or

```
11:17:52   1   not additional e-mail discovery is appropriate.  So I'll ask
11:17:58   2   the parties to work together and try and discuss that.
11:18:01   3                Is there anything else that we need to address?
11:18:07   4                MR. DOWNING:  Not from the defendants, Your
11:18:10   5   Honor.  Thank you.
11:18:15   6                MR. WITTENZELLNER:  Not from defendant LG.
11:18:17   7                MR. FARNAN:  Not from the plaintiff.
11:18:18   8                THE COURT:  Thank you very much everyone.  I
11:18:22   9   hope you stay safe and I hope to see you in my courtroom
11:18:26  10   here very soon.
          11                (Teleconference concluded at 11:18 a.m.)
          12
          13                I hereby certify the foregoing is a true
              and accurate transcript from my stenographic notes in the
          14   proceeding.
          15
                                             /s/ Dale C. Hawkins
          16                               Official Court Reporter
                                              U.S. District Court
          17
```