IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,  )<br>  )<br>           Plaintiff,  )<br>  )<br>   v.  )   C.A. No. 18-1216 (MN)<br>  )<br>HTC CORPORATION,  )<br>  )<br>           Defendant.  ) | |

**MEMORANDUM ORDER**

At Wilmington this 26th day of January 2021:

IT IS HEREBY ORDERED that the claim terms of U.S. Reissue Patent No. RE43,633 ("the RE'633 Patent") with agreed-upon constructions are construed as follows (*see* D.I. 82 at 3):

1. "beginning position address of textual source material" means "the address at which [a] textual source material starts in an electronic database"

2. "starting point address" / "ending point address" means "an offset value for the starting point" / "an offset value for the ending point"

3. "offset value" means "a value from a beginning point"

4. "image of the textual source material" means "an image displayed on a computer screen derived from the textual source material"

5. "look up table" means "an array or matrix of data that contains values for searching"

6. "discrete pieces" means "component words or phrases"

7. "external reference materials" means "reference materials from an external source"

8. "links to the external reference materials" means "[a pointer / pointers] to or the location of reference materials from an external source"[1]

---

[1] The parties reached agreement on this construction at the hearing with the understanding that the paragraph that this term appears in results in association between discrete pieces and external reference materials. (*See* D.I. 88 at 15:25-16:14 & 22:8-16).

Further, as announced at the hearing on January 7, 2021, IT IS HEREBY ORDERED that the disputed claim term of the RE'633 Patent is construed as follows:

1. "linking textual source material to external reference materials for display" will not be construed because this language only appears in the preamble, which the Court finds is not limiting

The parties briefed the issues (*see* D.I. 81) and submitted an appendix containing the RE'633 Patent and a claim construction opinion from a related case (*see* D.I. 83). Neither side provided a tutorial describing the relevant technology. The Court carefully reviewed all submissions in connection with the parties' contentions regarding the disputed claim terms, heard oral argument (*see* D.I. 88) and applied the following legal standards in reaching its decision:

## I. LEGAL STANDARDS

"[T]he ultimate question of the proper construction of the patent [is] a question of law," although subsidiary fact-finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015). "[T]he words of a claim are generally given their ordinary and customary meaning [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal citations and quotation marks omitted). Although "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Id.* at 1314. "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted).

The patent specification "is always highly relevant to the claim construction analysis . . . [as] it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is also possible that "the specification may reveal a

special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. "Even when the specification describes only a single embodiment, [however,] the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (internal quotation marks omitted) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence, . . . consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, courts "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a

3

particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, although extrinsic evidence "may be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

## I. THE COURT'S RULING

The Court's ruling regarding the disputed claim terms of the RE'633 Patent was announced from the bench at the conclusion of the hearing as follows:

> . . . At issue we have one patent, U.S. Patent No. RE43,633. There are two disputed terms. I am prepared to rule on the disputes. I will not be issuing a written opinion, but I will issue an order stating my rulings. I want to emphasize before I announce my decisions that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. I have reviewed the [RE]'633 Patent. I have also reviewed the only other document in the Joint Appendix – the claim construction decision in the *Sentius v. Microsoft* case in the Northern District of California. There was briefing on each of the disputed terms and there has been argument here today. All of that has been carefully considered.
>
> Now as to my rulings. As an initial matter, I am not going to read into the record my understanding of claim construction law generally. I have a legal standard section that I have included in earlier opinions, including recently in *Quest Diagnostics Investments LLC v. Laboratory Corporation of America Holdings*, No. 18-1436. I incorporate that law and adopt it into my ruling today and will also set it out in the order that I issue.
>
> Neither party has offered a definition of a person of ordinary skill in the art. But neither party has argued that there is any dispute

4

as to who that person would be that is relevant to the issues before me today.

The first term is "links to the external reference materials" in claims 62 and 146 of the RE'633 Patent.[2] During the argument today, the parties agreed to the construction "[a pointer / pointers] to or the location of reference materials from an external source" with the understanding that the paragraph that this term appears in results in association between the discrete pieces and external reference materials. I will adopt [the agreed-upon] construction.

The second term is "linking textual source material to external reference materials for display" which appears in the preamble of claims 62 and 146 of the RE'633 Patent. Plaintiff asserts that the preamble is not a limitation, but nevertheless proposes that the term be construed as "using a pointer [or pointers] to data or information or the location of data or information that is external to the source material for display."

Defendant argues that the preamble is limiting and that this term should be construed to mean "creating links to the external reference materials for known textual source material for display."

I agree with Plaintiff. The preamble is not limiting and no further construction is necessary. Preambles generally do not limit claims. The Federal Circuit has indicated that a preamble may serve as a claim limitation in certain instances, such as when the preamble "recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." That's *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). For example, the preamble may be a limitation when it provides the antecedent basis for terms that appear in the body of the claim.[3] Where the preamble merely indicates an invention's purpose or intended use, however, the preamble does not limit the scope of the claims.[4]

---

[2] The term "links to the external reference materials" appears in claim 62 of the RE'633 Patent, and the term "link to the external reference materials" appears in claim 146 of the RE'633 Patent. The parties agree that the terms should be construed together as the only difference is the use of "links" plural in claim 62 as compared to "link" in the singular in claim 146.

[3] *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

[4] *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

Here, Defendant has failed to show that the preamble recites essential structure or steps for the claims or that the preamble is necessary to give life, meaning, and vitality to the claim. Rather, in my view, the preamble – consisting mostly of the disputed term – merely recites the invention's purpose and is therefore not limiting. Having determined that the preamble is not limiting, I decline to construe the term "linking textual source material to external source materials for display," which only appears in the preamble.

_____
The Honorable Maryellen Noreika
United States District Judge